IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WESTLAKE REED LESKOSKY, *et al.*, | ) )  CASE NO.: 1:20-CV-1751 |
| Plaintiffs, | ) ) ) |
| v. | ) ) JUDGE DONALD C. NUGENT |
| HUDSON HOLDINGS, LLC, | ) ) ) |
| | ) MEMORANDUM OPINION ) AND ORDER |

This matter is before the Court on Plaintiffs Westlake Reed Leskosky, Ltd.'s ("WRL") and DLR Group, Inc.'s ("DLR") Motion for Summary Judgment, filed on February 11, 2022. (ECF #38). Defendant Hudson Holdings, LLC's ("Hudson") response to the summary judgment motion was due on March 4, 2022. Defendant has filed no response.

The Court has reviewed the record before it, including the affidavit and evidence provided by Plaintiffs in support of their motion, and applying the appropriate standard of review, finds that Plaintiffs' motion for summary judgment should be GRANTED.

**FACTUAL AND PROCEDURAL OVERVIEW**

On August 10, 2020, Plaintiffs WRL and DLR Group, Inc. filed a complaint against Hudson Holdings alleging breach of contract. The facts alleged in the Complaint arise out of a contractual agreement entered into between WRL and Hudson, whereby WRL agreed to perform architectural and engineering services in connection with a project to renovate the former Union Commerce Bank Building located at 925 Euclid Avenue, Cleveland, Ohio ("Project"). (ECF #38-1 PageID #141; ECF #1-1 PageID # 5-7). These facts are as follows.

On August 24, 2016, WRL entered into a contractual agreement with Hudson ("Contract") pursuant to which WRL agreed to provide architectural and engineering design services for the Union Commerce Building renovation, and Hudson agreed to pay for said services. (ECF #38-1 PageID #141 ¶ 4; ECF #1-1 PageID # 5-7). Pursuant to the Contract, WRL was "authorized to undertake the agreed scope of the Design phase and, following approval by Hudson Holding of the Design phase deliverables, to commence with the Construction Documents phase of the Project." (ECF #1-1 PageID #5-6). Exhibit A to the Contract set forth nineteen specific work items to be performed by WRL, as well as certain items specifically excluded. (ECF #1-1, Ex. A, PageID 8-9). The professional fees associated with the architectural and engineering design services to be performed by WRL was set forth in Exhibit B to the Contract. (ECF #1-1, Ex. B, PageID 10).

The written agreement between WRL and Hudson was specifically titled "Letter of Intent - Sandvick Historic Preservation." (ECF #1-1 PageID #5). Though this written Letter of Intent agreement referenced that it would later be incorporated into a more formal Owner-Architect agreement based on American Institute of Architects form of Agreement AIA-B101, it also expressly provided that the "executed Letter of Intent shall serve as a valid written contract until

the final contract is executed." (ECF #1-1 PageID #6).

From June 16, 2016 to September 30, 2016, WRL performed design services indicated in the agreement, later invoicing Hudson for the amount of $294,576.76. (ECF #38-1 PageID #141 ¶ 5). The Contract provided that monthly invoices for accrued billings in 2016 must be paid by January 30, 2017 as a condition for WRL to continue work on the project. (ECF #1-1 Page ID #6).

On October 1, 2016, DLR acquired substantially all of the assets of WRL, including the rights and obligations under the Contract. (ECF #38-1 PageID #141-42 ¶ 6). On February 6, 2017, Hudson and DLR modified the contract to revise the payment terms such that if Hudson were to make a partial payment on the accrued 2016 billings by April 15, 2017, WRL would continue to provide services, and Hudson could pay the balance of fees accrued and invoiced when Hudson was expected to receive construction financing in August 2017. (ECF #38-1 PageID # 142 ¶ 7; ECF #1-1 PageID # 11). Per the terms of the modification agreement, DLR was excused from any further obligation to perform design services after August 17, 2017 if payments owed to DLR by Hudson remained outstanding. (ECF #1-2 PageID #11). Because Hudson did not pay either WRL or DLR any of the invoiced amounts by the end of August 2017, DLR ceased proving any further design services. (ECF #38-1 PageID #142 ¶ 13).

Prior to the end of August 2017, from October 1, 2016 to July 31, 2017, DLR performed additional design services, and thereafter invoiced Hudson for a net amount of $312,761.20. (ECF #38-1 PageID #142 ¶ 8). The net total invoiced by DLR reflected a credit for a $50,000.00 payment on Hudson's behalf, a payment that was made on November 2, 2017 by HH Cleveland Huntington LP ("HH"). (ECF #38-1 PageID #142 ¶ 9).

Except for the $50,000.00 payment made on Hudson's behalf by HH in November 2017,

Hudson has not paid WRL's or DLR's invoices for the design services rendered. (ECF #38-1 PageID #142 ¶ 12). The total amount invoiced by WRL and DLR to Hudson is $606,365.74. (ECF #38-1 PageID #142 ¶ 14).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-movant. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

Federal Rule of Civil Procedure 56(e) states:

> If a party fails to properly support an assertion of fact *or fails to properly address*

*another party's assertion of fact* as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) *consider the fact undisputed for purposes of the motion*;

(3) *grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it*; or

(4) issue any other appropriate order.

FED. R. CIV. P. 56(e) (emphasis added).

Thus, the Federal Rules identify the penalty for the lack of a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

## ANALYSIS

Plaintiffs' affidavit and exhibits submitted in support of its motion for summary judgement establish that they are entitled to judgment as a matter of law.

Plaintiffs have, first, established the existence of a contract. They have also presented an unopposed affidavit asserting that they performed all of the conditions of the contract which they were required to perform, except those excused by Hudson's breach. Plaintiffs have further presented affidavit evidence that Hudson breached the terms of the contract by failing to pay for Plaintiffs' services; and they have presented evidence supporting their asserted alleged damages. Generally, nothing more is required to state a claim for breach of contract. *See, e.g., Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); *Capital Equity Grp. v. Ripken Sports, Inc.*, No. 1:16-CV-1953, 2017 WL 4155766, at *3 (N.D. Ohio Sept. 19, 2017), *aff'd* 744 F. App'x 260 (6th Cir. 2018).

Defendant has offered no affidavit or other evidence contradicting any of the facts asserted in Plaintiffs' motion as supported by the affidavit and exhibits submitted in support of

the motion..

Under Ohio law, a breach of contract claim contains four elements: "(1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the existence of damages." *Lebo v. Impac Funding Corp.*, No. 5:11-CV-1857, 2012 U.S. Dist. LEXIS 24187, *9 (N.D. Ohio Feb. 8 2012) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

A Letter of Intent can be an enforceable contract if the parties have manifested an intent to be bound by the terms of the letter of intent, and if that intention is sufficiently definite as to be specifically enforced. *See M.J. DiCorpo Inc. v. Sweeney*, 1994-Ohio-316, 69 Ohio St. 3d 497, 503, 634 N.E.2d 203, 207 (1994).

Here, the evidence presented shows that the parties manifested an intent to be bound. The Letter of Intent itself expressly states that the parties indeed did intend to be bound by its terms with regard to the provision of design services, and even specifically stated that the "executed Letter of Intent shall serve as a valid written contract until the final contract is executed." (ECF #1-1 PageID #5). The Letter of Intent states that it would be later incorporated into a broader agreement, and authorizes the parties "to undertake the agreed scope of the Design phase." (ECF #1-1 PageID #5). The Letter of Intent states that it shall be in effect unless modified in writing by the parties, that termination of the agreement requires 14 days notice, and that, if terminated, Hudson is still liable to "pay WRL the fee due for all services completed as of the date of such termination." (ECF #1-1 PageID #6). The Modification letter of February 6, 2017 verifies Hudson's intent to pay monthly invoices for accrued billings for work performed under the Letter of Intent, and that breach of that obligation relieves WRL of its obligation to continue the work it agreed to perform under the Letter of Intent. (ECF #1-1 PageID #11).

The affidavit and evidence presented also establish that the Letter of Intent contains specific essential terms regarding the scope of the work to be performed, and the expected costs of the project, including architecture services, pre-design services, and design services. (ECF #1-1 PageID 5-10; ECF #1-2 PageID #11-12).

The affidavit presented also establishes Plaintiffs' performance of their obligations under the terms of the agreement. (ECF #38-1 PageID 141-42 ¶¶ 5-8, 13). The affidavit further establishes Defendant's breach of the agreement for non-payment of the accrued invoice billing amounts, less the amount paid by HH on Hudson's behalf. (ECF #38-1 PageID #142 ¶¶ 9-12).

Finally, the affidavit presented a statement of claimed damages in the principal amount due on the unpaid invoices, which amount is $606,365.74. (ECF # 38-1 PageID #142 ¶ 14).

## CONCLUSION

Based on a careful consideration of the uncontradicted affidavit and evidence presented by Plaintiffs, and a review of the relevant authority, the Court finds that there is no genuine issue as to any material fact and that Plaintiffs are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Accordingly, pursuant to FED. R. CIV. P. 56(e), the Court GRANTS summary judgment in favor of Plaintiffs WRL and DLR, and against Defendant Hudson, and Orders Defendant Hudson to pay Plaintiffs the amount of $606,365.74, plus any court costs and statutory post-judgment interest due under applicable law.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: March 23, 2022