IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WESTLAKE REED LESKOSKY, *et al.*, | ) ) ) | CASE NO.: 1:20-CV-1751 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| HUDSON HOLDINGS, LLC, | ) ) ) | <u>MEMORANDUM OPINION AND ORDER</u> |
| | ) | |

This matter is before the Court on Defendant Hudson Holdings, LLC's ("Hudson") *Rule 59(e) Motion to Alter or Amend Judgement, or in the Alternative Rule 60(b) Motion to Vacate the Judgment* (ECF #44), related to the Court's granting of Plaintiffs Westlake Reed Leskosky, Ltd.'s ("WRL") and DLR Group, Inc.'s ("DLR") unopposed *Motion for Summary Judgment* on March 23, 2022 (ECF #40). This motion has now been fully briefed by the parties, including the submission of affidavits and evidence (ECF #44, #45, #46). Oral argument on the motion was heard on May 4, 2022 (ECF #47).

This matter is also before the Court on WRL's and DLR's *Motion for Prejudgment Interest*, filed on March 24, 2002 (ECF #41), based on the Court's entry of judgment for

-1-

Plaintiffs in the principal amount of $606,365.74, plus any court costs and statutory post-judgment interest due under applicable law. Hudson has not filed a response to the prejudgment interest motion. This motion was also addressed by the parties at the May 4, 2022 status conference and hearing. (ECF #47).

The Rule 59(e) portion of Hudson's motion, asking the Court to reconsider its grant of summary judgment, is based on its assertion that Hudson was not properly served with the motion for summary judgment based on a typographical error in the certificate of service, which showed Hudson's mailing address as "20 S. Winton Avenue" instead of "20 S. Swinton Avenue" – the address used by Plaintiffs to initially serve the complaint (ECF #6; ECF #9), and later used by the Court to send notice to Hudson's Principal and Registered Agent, Andrew Greenbaum, of ongoing proceedings after Hudson's counsels' serial *Motions to Withdraw as Counsel* had been granted in November 2021 (ECF #33) and December 2021 (ECF #35*).[1]

The Rule 60(b) portion of Hudson's motion invokes Rule 60, part (b)(1) ("mistake, inadvertence, surprise, or excusable neglect"), part (b)(4) ("the judgment is void"), and part (b)(6) ("any other reason that justifies relief"). The motion asserts that Hudson's failure to respond to Plaintiffs' motion for summary judgment was due to "excusable neglect," FED. R. CIV. P. 60(b)(1), that the Court's order granting Plaintiffs' unopposed motion for summary

---

[1] From October 2020 to November 2021, Hudson was represented by attorneys Phillip Ciano, Brent Silverman, and Sarah Katz of the law firm Ciano & Goldwasser, LLP (ECF #11). On November 16, 2021, attorneys Ciano and Katz filed a motion to withdraw as counsel for Hudson (ECF #31), which was granted by the Court on November 17, 2021 (ECF #33). On December 17, 2021, attorney Silverman filed a similar motion to withdraw as Hudson's counsel, informing the Court that his name had been inadvertently not included in the earlier filed motion (ECF #35). That motion was granted by the Court on December 20, 2021 (ECF #35*). An asterisk ("*") following a numerical reference to the ECF Docket Report refers to unnumbered Docket entries related to the referenced ECF entry.

judgment was "void" because the motion leading to the order was not properly served on

Hudson, FED. R. CIV. P. 60(b)(4), and that "exceptional and extraordinary circumstances" not

addressed by the first five numbered clauses of the rule" warrant relief from the judgment against

it, FED. R. CIV. P. 60(b)(6).

Having reviewed the briefs and evidence submitted by both parties, and heard argument

from counsel for all parties at the May 4, 2002 status conference, on both motions, as well as

examining the applicable law, the Court finds that Defendant's Rule 59 and Rule 60 motion

should be DENIED.   The Court finds that Plaintiffs' motion for prejudgment interest is

supported in both fact and law (though it includes a calculation anomaly later addressed in this

opinion).  Accordingly, Plaintiffs' motion for prejudgment interest, is GRANTED, subject to the

modification noted by the Court.


**PROCEDURAL HISTORY AND CHRONOLOGY**

The facts pertinent to Hudson's motion are best set forth as a chronology of the facts and

evidence presented in the motion papers and other filings in this case:

August 24, 2016:      WRL and Hudson (identified as "Hudson Holdings" in the
document) entered into a "Letter of Intent" contract agreement
("Contract"),[2] pursuant to which WRL agreed to provide

---

[2]  In the Court's earlier *Memorandum of Opinion and Order* (ECF #20) denying
Defendant Hudson's *Motion to Dismiss Plaintiffs' Complaint* (ECF #15), and again in its
*Memorandum of Opinion and Order* (ECF #40) granting Plaintiffs WRL's and DLR's *Motion for
Summary Judgement* (ECF #38), the Court found that the August 24, 2016 Letter of Intent
entered into between, and executed by, WRL and Hudson (ECF #1-1, Ex. A, PageID #7), along
with a February 6, 2017 Modification Agreement entered into between, and executed by "DLR
Group/Westlake Reed Leskosky" and Hudson (ECF #1-2 PageID #11-12) were binding contracts
between Plaintiffs WRL and DLR and Defendant Hudson.

architectural and engineering design services for the Union Commerce Building renovation to be performed in Downtown Cleveland, Ohio.  (ECF #1-1 PageID #7).

February 6, 2017:  WRL and its successor DLR (identified as "DLR Group/Westlake Reed Leskosky" in the document) and Hudson (identified in the document as "Hudson Holdings") entered into a Modification Agreement, pursuant to which certain payment terms were revised and DLR would be excused from further performance if outstanding payments owed by Hudson to DLR were not paid by the end of August 2017.  (ECF #1-2 PageID #11-12).

May 13, 2019:  Hudson files a "Florida Limited Liability Company Amended Annual Report" with the Florida Secretary of State stating that its principal place of business, its mailing address, and the address of its Manager and Registered Agent, Andrew Greenbaum, was 20 South Swinton Avenue, Delray Beach, FL 33444 US.  (ECF #45-2).

August 10, 2020:  Complaint filed by Plaintiffs WRL and DLR against Hudson. (ECF #1).  The Request for Service filed by Plaintiffs' counsel requested the Clerk of Court to issue summons and service of the Complaint, via certified mail, to "HUDSON HOLDINGS, LLC, c/o Registered Agent, Andrew Greenbaum, 20 S. Swinton Avenue, Delray Beach, FL 33444."  (ECF #3).

August 13, 2020:  Original Summons issued to counsel by the Clerk of Court for service upon Hudson at "Hudson Holdings, LLC, c/o Registered Agent, Andrew Greenbaum, 20 S. Swinton Avenue, Delray Beach, FL 33444."  (ECF #6).

August 19, 2020:  Summons and Complaint served by Clerk of Court to Hudson Holdings, LLC, by certified mail.  (ECF #7*).

September 15, 2020:  Summons and Complaint received and acknowledged by Hudson's Registered Agent, Andrew Greenbaum, at 20 S. Swinton Avenue, Delray Beach, FL 33444.  (ECF #9).

October 5, 2020:  Hudson files a "Corporate Reinstatement" document with the Florida Secretary of State changing its principal address, and the address of its Registered Agent, Andrew Greenbaum, to 7710 NW 71st Court #307, Tamarac, FL 33321.  (ECF #45-1, Declaration of Brian T. Winchester at ¶2, PageID #264; ECF #45-2, Corporate Amended Annual Report, PageID #268).  To date, Hudson has never filed any paper with the Court informing either the Court or Plaintiffs' counsel of the change in its principal address and that of its Registered Agent.

October 22, 2020:  Hudson enters an appearance in the case through attorneys Brent Silverman, Phillip Ciano, and Sarah Katz, of the law firm Ciano & Goldwasswer, LLP.  (ECF #11).  Hudson, through counsel, files *Unopposed Motion for Leave to Answer, Move, or Otherwise Respond to Complaint*.  (ECF #12).

October 23, 2020:  Court holds telephone status conference, with all counsel participating: "***Telephonic status held with all counsel participating.  Defendant now has counsel so discovery to proceed.  Plaintiff has disclosed documents.  Status re-set to 12/28/20 at 10:00 am.  All counsel notified of this ORDER.***" (ECF #14).  Court grants Hudson's motion for leave, giving Hudson until November 12, 2020 to answer, move, or otherwise respond to the complaint.  (ECF #13).

November 12, 2020:  Hudson files *Motion to Dismiss Plaintiff's Complaint*, with a memorandum in support, asserting that the August 2016 Letter of Intent was not an enforceable contract because "(1) the parties did not manifest an intent to be bound, (2) there was no meeting of the minds as to the essential terms of any binding, enforceable agreement, (3) the essential terms of the Letter of Intent do not contain requisite contractual specificity, and (4) Plaintiffs' promises were illusory."  (ECF #15).  Hudson identifies itself in the motion as a party to the Letter of Intent contract.  No affirmative defense or claim of agency is mentioned in the motion.

December 30, 2020:  Court denies Hudson's motion to dismiss, finding that the Letter of Intent is an enforceable contract by the which the parties

manifested an intent to be bound, that there was a meeting of the minds as to the essential terms, and that the essential terms are set forth with requisite specificity to be an enforceable contract.  (ECF #20).

January 7, 2021:  Hudson files its answer to the complaint.  While Hudson's answer contains a number of affirmative defenses, none relate to agency in any way.

November 16, 2021:  Hudson's counsel files a motion to withdraw as counsel.

November 17, 2021:  Court holds telephone status conference with all counsel participating: *"Telephonic status held with all counsel participating.  Counsel for Defendant has filed a Motion to Withdraw as Counsel.  Motion granted (Doc #31).  Status re-set for 12/17/21 at 8:30 am. Defendant given until next status to retain new counsel.  Plaintiff may file an Amended Complaint to add new party.  All counsel notified of this ORDER."* (ECF #32). Court grants Defendant's counsels' motion to withdraw as counsel. (ECF #33).

December 17, 2021:  Court holds telephone status conference.  No one appears for Hudson, either through counsel or its principal: *"Telephone status held with only counsel for Plaintiff participating – No one appeared on behalf of Defendant although notified of date and time of status.  Therefore, Default Judgment hearing set for 12/29/21 at 8:30 am.  Failure of Defendant to participate or otherwise defend the Complaint may result in a Default Judgment being granted."* (ECF #34).

December 29, 2021:  Court holds telephone status conference, attended by Plaintiffs' counsel and Hudson's principal, Andrew Greenbaum: *"Telephone status held and counsel for Plaintiffs participating.  No attorney appeared for Defendant, but Mr. Greenbaum from Hudson appeared and asked for time to obtain counsel.  Case continued to allow Defendant to retain counsel.  If counsel does not appear on behalf of Defendant for status on 2/4/22 at 8:45 am, Plaintiffs may file for Summary Judgment on that date and Court will rule on such motion in a timely manner."* (ECF #36).  A copy of the

-6-

minutes of the Court's status conference was mailed by the Court to Hudson at the address still on file by Hudson with the Clerk of Court, 20 S. Swinton Avenue, Delray Beach, FL 33444.  (ECF #36*).

January 31, 2022:  Hudson's principal. Andrew Greenbaum, alleges that he was diagnosed with COVID-19 on or about this date, and that he was ill until the second week of February 2022.  (ECF #44-1, Affidavit of Andrew Greenbaum ¶19, PageID #176).

February 3, 2022:  Plaintiffs' counsel e-mails Hudson's principal, Andrew Greenbaum, inquiring whether new counsel will be appearing at the February 4, 2022 status conference: "Mr. Greenbaum – do you have counsel?  Please have them call me tomorrow morning at [phone number omitted] before the 8:45 a.m. call with the court and I will then add the Judge to the call."  (ECF #45-5 PageID #271-272).  Hudson's principal, Andrew Greenbaum, does not respond to the e-mail until close to a month later, on March 1, 2022.  (ECF #45-5 PageID #271).

February 4, 2022:  Court holds telephone status conference.  No one appears for Hudson, either through counsel or its principal: "*Telephone status held, and only counsel for Plaintiffs participated.  No one participated on behalf of Defendant although notified of date and time of status.  Therefore, as previously explained to Defendant personally, any dispositive motion to be filed by 2/11/22; response due by 3/4/22; and status by phone reset for 3/9/22 at 10:00 am.*"  (ECF #37).  A copy of the minutes of the Court's status conference was mailed by the Court to Hudson at the address still on file by Hudson with the Clerk of Court, 20 S. Swinton Avenue, Delray Beach, FL 33444.  (ECF #37*).

February 11, 2022:  Plaintiffs file *Motion for Summary Judgment.*  (ECF #38).  Plaintiffs' counsel served a copy of the motion, with an apparent typographical error in the street name – "20 S. Winton Avenue" versus "20 S. Swinton Avenue" – to Hudson's still-on-file address as well as to Hudson's principal's, Andrew Greenbaum, e-mail address.  (ECF #38).  The e-mail sent by Plaintiffs' counsel to Mr. Greenbaum included a forwarded text of the "Notice of Electronic

-7-

Filing" that had been sent to counsel, which noted that the Clerk of Court had sent notice of the filing of Plaintiffs' summary judgment motion by mail to "Hudson Holdings, LLC, 20 S. Swinton Avenue, Delray Beach, FL 33444." (ECF #45-6 PageID #273-274). Hudson's principal, Andrew Greenbaum, claims to have been unaware of the motion until after it was granted by the Court. (ECF #44-1, Affidavit of Andrew Greenbaum ¶17, PageID #176). Plaintiffs' counsel has filed an affidavit with the Court testifying that at no time was the copy sent by mail returned as undeliverable. (ECF #45-1, Declaration of Brian T. Winchester at ¶5, PageID #265).

| | |
|---|---|
| March 1, 2022: | Hudson's principal, Andrew Greenbaum sends an e-mail responding to Plaintiffs' counsel's e-mail of February 3, 2002 regarding the then-upcoming February 4, 2022 status conference with the Court: "I am sooo [*sic*] sorry.  I was stuck in Georgia with Covid and missed our hearing.  I have new counsel coming on board.  Will get you his contact shortly and he can file the necessary motions."  (ECF #45-5 PageID #271). |
| March 2, 2022: | Plaintiffs' counsel responds to Hudson principal Andrew Greenbaum by e-mail, stating "I trust your new counsel will know what they need to try and seek relief as you were notified directly by the court of the hearing and your requirement to retain counsel," and copying in the text the Notice of Electronic Filing in connection with the Court's February 4, 2002 status hearing, including a copy of the text of the Court's order requiring Hudson to file a response to Plaintiffs' summary judgment motion for March 4, 2002, and setting the next status conference for March 9, 2022 at 10:00 am.  (ECF 45-5 PageID #271, copying the text of the Court's February 4, 2002 orders, at ECF #37). |
| March 4, 2002: | Due date for response by Hudson to Plaintiffs' motion for summary judgment.  No appearance by any new counsel for Hudson is filed and no response to Plaintiffs' motion for summary judgment is filed. |
| March 9, 2022: | Court holds telephone status conference.  No one appears for Hudson, either through counsel or its principal: "***Status conference*** |

-8-

*held; only counsel for Plaintiffs participating. Defendant has not retained a new lawyer and has not responded to Plaintiffs' motion for summary judgment. The response was due 3/4/22. Court to rule on motion for summary judgment. Status, if necessary, set for 4/21/22 at 10:00 am.*" (ECF #39).

March 23, 2022:     Court grants Plaintiffs' motion for summary judgment, ordering Hudson to pay Plaintiffs the amount of $606,365.74, plus any court costs and statutory post-judgment interest due under applicable law. (ECF #40). Notice of the Court's *Memorandum of Opinion and Order* is sent by the Court to the address for Hudson still on file with the Court, 20 S. Swinton Avenue, Delray Beach, FL 33444. (ECF #40*).

April 4, 2022:      The Court's Notice of the *Memorandum of Opinion and Order* sent to Hudson was returned to the Court, marked by the United States Postal Service "Return to Sender. Not Deliverable As Addressed. Unable to Forward." (ECF #43). On this same date, new counsel for Hudson enters an appearance and files a motion for relief from judgment under Federal Rules of Civil Procedure 59(e) and 60(b). (ECF #44).

## **ANALYSIS**

### **Defendant's Motion to Alter or Amend Under Rule 59(e)**

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days after the entry of a judgment by the Court. FED R. CIV. P. 59(e). However, "[a] district court may grant a Rule 59(e) motion to alter or amend a judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

In its motion, Hudson argues that it was never properly served with a copy of Plaintiffs'
motion for summary judgment, based on the error in the address included on the certificate of
service and based on Hudson's principal, Andrew Greenbaum's, testimony that he never received
a copy of the motion.  (ECF #44 PageID #164).  Hudson asks the Court to withdraw its summary
judgment order based on "a need for the Court to prevent a manifest injustice."  Plaintiffs, in
turn, argue that, even if Hudson is correct that it never received the mailed copy of the summary
judgment motion because of the incorrect address included on the certificate of service, it makes
no difference, as "[Hudson], having ignored the court's repeated deadlines to have new counsel
appear and defend, Hudson was in default and, under FRCP 5(a), was not entitled to notice of a
motion for summary judgment[,] . . . and therefore cannot show the manifest injustice required
by Rule 59(e)."  (ECF #45 PageID #255).

As a preliminary matter, Plaintiffs are incorrect in their assertion that Hudson was not
entitled to service of the summary judgment motion because Hudson was in "default" for the
purposes of Federal Rule of Civil Procedure 5(a) for not having retained new counsel or
appearing at the February 4, 2002 conference to otherwise defend against the complaint – even
after repeated orders by the Court, on November 17, 2021, December 17, 2021, and December
29, 2021, for Hudson to retain new counsel by the time of the February 4, 2002 status conference.

The provisions of Federal Rule of Civil Procedure 5(a) (as well as Federal Rule of Civil
Procedure 55 governing entering entry of default) dispensing with serving of papers upon parties
where there is a "failure to appear," are intended to apply only to parties who have *never* made an
appearance responding to the complaint, not to parties who have failed to make an appearance or
otherwise defend at a later stage of the proceedings.  As noted by the court in *Radack v.*

-10-

*Norwegian America Line Agency, Inc.*, 318 F.2d 538 (2d Cir. 1963):

> Arguably, the language "in default for failure to appear" applies to the case at bar since appellees failed to appear for the calendar call. However, Professor Moore states that such language, appearing in Rules 5(a) and 55(b)(1) as well, means that once a party makes an appearance in an action, he is entitled to notice of all proceedings taken in that action thereafter. Rule 5(a) provides for the service of papers and motions on all parties affected thereby except that "no service need be made on parties in default for failure to appear * * *." Rule 55(b)(1) provides for entry of judgment in certain instances by the clerk of the court against a defendant "if he has been defaulted for failure to appear." These provisions are clearly intended to apply only to parties who have never made an appearance; they are inapplicable where a party has failed to make an appearance at some subsequent stage of proceedings.

*Id.* at 541-42 (ellipsis in original, citation omitted).

While Hudson has subsequently "failed to appear" numerous times with respect to Court hearings after its counsel withdrew, failed to retain new counsel to defend after the Court had repeatedly and personally ordered Hudson, as a corporate party, to obtain new counsel prior to each of the Court hearings in late 2021 and early 2022 where Hudson made no appearance (and after Hudson's principal had been, again personally, notified by the Court at the December 29, 2021 status conference that the result of Hudson's failures could lead to an entry of default against it or subject it to the Plaintiffs filing a motion for summary judgment), Hudson *did*, *initially*, enter an appearance through counsel at the outset of the case and did, ultimately, file an answer to the complaint. Thus, Hudson was entitled to service of the motion for summary judgment. *See O'Halloren v. Quartzite Carrara*, 129 F.R.D. 24, 25 (D. Mass. 1990) ("An appearance does not prevent a party from subsequently becoming in default. But under the Rules a party who enters a proper appearance, although he later defaults because of failure to plead or otherwise defend within the time required by the rules, is entitled to the same notice of the

proceedings and the acts done in the case, as a party who is not in default."); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141-42 (5th Cir. 1996) (although defendant's "appearance" consisted only of participating in a single telephone conference with the other parties before the trial court and a telephone call with counsel for plaintiff that he intended to contest the suit, court of appeals held that it was a sufficient "appearance" for defendant to be entitled to notice before the granting of summary judgment).

However, the fact that Defendant Hudson asserts that it "never received" the copy of Plaintiffs' motion for summary judgment does not, in itself, entitle Hudson to relief under the "need to prevent manifest injustice" standard of Rule 59(e). In fact, in examining the circumstances of this case, it appears that Hudson's alleged failure to receive the mailed copy of Plaintiffs' summary judgment motion may have been a result of Hudson's own decision to avoid mail service at the address that it appears to have abandoned well over a year ago according to its Florida corporate filings, while giving no notice of such change to either Plaintiffs' counsel or the Court.

Hudson's assertion of not being served a copy of Plaintiffs' motion is based solely on the typographical error on the summary judgment motion's certificate of service, which read "20 S. Winton Avenue." It is not based on any substantive evidence that the motion was not actually mailed, by the service envelope, to the "20 S. Swinton Avenue" address that has been used by Plaintiffs to serve or otherwise communicate with Hudson at earlier stages in this case when Hudson was not represented by counsel, as shown by the *Request for Service* filed by Plaintiffs (ECF #3) and the *Summons* issued by the Court in response to that request (ECF #6), as well as the address to which Plaintiffs originally sent Hudson the February 6, 2017 Letter Agreement

modification letter attached to the Complaint forming the basis of this action. (ECF #1-2 PageID #11).

Plaintiffs have indicated that they sent a copy of the motion by mail to Hudson and that the envelope in which it sent the motion was never returned as undeliverable. (ECF #45-1, Declaration of Brian T. Winchester ¶5, PageID #265). Other evidence indicates that Defendant Hudson has since stopped accepting *any mail whatsoever* at the "20 S. Swinton Avenue" address, as demonstrated by the *Court's own mailings to that address* now being rejected as "Not Deliverable As Addressed, Unable to Forward" at the time of the summary judgment ruling. (ECF #40* & ECF #43 PageID#158) (copy of *Memorandum of Opinion and Order* returned as undeliverable at the 20 S. Swinton Avenue address).

Under Federal Rule of Civil Procedure 5(b), "A paper is served under this rule by . . . mailing it to the person's last known address – in which event service is complete upon mailing." FED. R. CIV. P. 5(b)(2)(C). *See also S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 928 (9th Cir. 2014) (utilizing mail delivery service to deliver papers to address provided by defendant to district court in connection with summary judgment motion was sufficient despite claim by defendant that motion was not then conveyed to him by receptionist); *Carter v. McGowan*, 524 F. Supp. 1119, 1121 (D. Nev. 1981) ("The plaintiff's claim that he never received notice of the taking of his deposition is not disputed. However, mailing of the notice to him at his last known address constituted service upon him. Nonreceipt of the notice does not affect its validity."); *Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975) ("In the case at bar, the requirements of Rule 5(b) have been met. The averments of plaintiff's supporting affidavit clearly disclose proper service of the Request for Admissions by mail. Non–receipt of

-13-

the paper does not affect the validity of the service."). The evidence indicates that Plaintiffs did send a mail copy of the summary judgment motion to Hudson.

Hudson's claimed "non-receipt" of the mail copy of the summary judgment motion may be result of its own apparent decision to no longer accept mail at the address maintained by it with the Court during the time in question, as evidenced by the return as "undeliverable" mail sent by the Court to the 20 S. Swinton Avenue address (ECF #43). That is not a ground on which relief can be supported:

> All parties have an obligation to keep the Court advised of a current address for the service of papers, either to counsel or the party directly. One who does not do so should not thereby be able to foreclose an opposing party from taking full advantage of the procedures which our Rules allow. If receipt were required to effect service, any party could effectively make service impossible by remaining incognito.

*Freed*, 66 F.R.D. at 552; *see also* ECF #45-3 (Hudson's filing with Florida Secretary of State in October 2020 changing its principal place of business address, mailing address, and address of its Registered Agent from *20 S. Swinton Avenue, Delray Beach, FL 33444* to *7710 NW 71st Court #307, Tamarac, FL 33321*); ECF #45-4 (Document of Florida Division of Corporations showing that Hudson maintains these Tamarac, Florida addresses); ECF #43 (showing that Hudson is presently not even accepting delivery of the Court's mailings to "20 S. Swinton Avenue, Delray Beach, FL 33444").

Further, in addition to mail service on Hudson being "complete" for the purposes of Rule 5(b) upon mailing, the circumstances of this case support a finding that service of the summary judgment motion to Hudson's principal and Registered Agent through the Court's Electronic Case Filing system (as well as Plaintiffs' subsequent sending of a copy of the motion for

-14-

summary judgment to Hudson's principal by personal e-mail), accomplished adequate service on Hudson under an "exceptional good cause" standard, as recognized by courts when a party has previously accepted service without objection by a method not strictly stated under Rule 5(b). Here, the record shows that Hudson was previously noticed and served, without objection, by its own counsel with counsels' motions to withdraw via the Court's Electronic Case Filing system.

While Hudson's motion for relief from judgment indicates that "[a]t no time did Hudson register under Local Rule 5.1 to receive read only legal filings by electronic means from the U.S. District Court" (ECF #44-1, Affidavit of Andrew Greenbaum ¶16, PageID #176),[3] the facts of this case demonstrate that Hudson, when service was, by necessity, required to be made on Hudson's principal and Registered Agent individually in connection with Hudson's counsels' motions to withdraw, has accepted service from its own counsel via the Court's Electronic Case Filing system. *(ECF #31, Motion to Withdraw as Counsel for Defendant (Phillip A. Ciano and Sarah E. Katz)* ("Notice of this filing will be sent to all parties by operation of the Court's electronic filing system") & ECF #35, *Motion to Withdraw Brent S. Silverman as Counsel for Defendant* (same)). Service by Hudson's attorneys of the motion to withdraw papers on "all parties" would, by necessity, include Hudson being served "as a party" through its principal and Registered Agent, given that counsel filing a motion to withdraw as counsel for the corporate entity would not serve such papers by simply serving the motion on themselves as Hudson's counsel. Hudson's then-attorneys served the withdrawal motions on Mr. Greenbaum through

---

[3] Northern District of Ohio Local Rule 5.1 reads, in pertinent part: "While parties and pro se litigants may register to receive "read only" electronic filing accourts so that they may access documents in the system and receive electronic notice, typically only registered attorneys, as Officers of the Court, will be permitted to file electronically." N.D. OHIO LR 5.1(c).

the Court's ECF system, a method by which Mr. Greenbaum was aware of and did not object to, and for which he never demanded mail service.

While "actual notice" when service is not accomplished in accordance with the requirements of Rule 5(b) (though here, the Court finds that such service *was* accomplished upon mailing) is not usually found to be a substitute for service under the requirements of Rule 5(b), in certain circumstances, proper service by means outside of the strict terms of Rule 5(b) has been upheld where "good cause" is shown. *See S. Cal Darts Ass'n v. Zaffina*, 762 F.3d 921, 928 (9th Cir. 2014) ("We have held that even where the party to be served received 'actual notice' of the documents in question, the serving party must 'demonstrate exceptional good cause for failing to comply with Rule 5(b)'"). One of those circumstances is where a party has previously accepted service by a method outside of Rule 5(b) without objection. As noted by another court in upholding service in the context of a party who had previously been served by fax transmission, but later argued that it was inadequate service as "they would now be strictly observing the rules":

> Because the discovery requests were not properly served and discovery has ended, defendants have no duty to respond to the discovery unless plaintiff can show exceptional good cause. The Court finds such circumstances do exist in this case. First, defendants had actual notice and receipt of a copy of the discovery requests within the time in which they would be required to respond if the discovery had been properly served. However, actual notice by a means other than authorized by Rule 5(b) does not constitute valid service and is not an exception to the rule. Therefore, a party must advance some other compelling circumstance, in addition to actual notice in order to have the Court excuse non-compliance with Rule 5(b). Plaintiff does this by showing defendants had permitted plaintiff to serve her discovery requests through fax transmissions on prior occasions without objection. While defendants informed plaintiff at one time near the end of discovery that they would now be strictly observing the rules, defendants did not specifically tell

-16-

plaintiff that fax transmission of discovery requests would no longer be accepted. Indeed, defendants even responded to one part of the July 4, 1990 discovery requests sent by fax transmission. It is, therefore, fair to find that defendants continued to agree to service by fax transmission of the Requests for Admissions.

The Court finds defendants waived their right to insist on compliance with Fed. R. Civ. P. 5(b) where they received actual notice by delivery of a copy of the discovery through fax transmission and where defendants, through their prior conduct, implicitly agreed to service through fax transmission.

*Salley v. Bd. of Governors, Univ. of North Carolina*, 136 F.R.D. 417, 420-21 (M.D.N.C. 1991) (internal citation omitted).

Here, as earlier indicated, the Court finds that mail service on Hudson was accomplished under Rule 5(b) upon mailing. However, even if the typographical error in the certificate of service attached to Plaintiffs' summary judgment motion was repeated on the mailing envelope such as to cause failure of delivery – though there is no evidence of any return of the mailed motion as undeliverable – the Court finds that Hudson's prior acceptance of documents sent to its principal and Registered Agent by e-mail through the ECF system (as well as individual e-mail from Plaintiffs' counsel) prevents it from now claiming improper service under the strict terms of Rule 5(b).

Accordingly, the Court finds that Hudson has not demonstrated a "need to prevent manifest injustice" under Federal Rule of Civil Procedure 59(e), and its motion to alter or amend judgment is hereby DENIED.

## **Defendant's Motion for Relief From Judgment Under Rule 60(b)**

Hudson also moved this Court to vacate the order granting summary judgment under

various parts of Federal Rule of Civil Procedure 60: part (b)(1) (mistake, inadvertence, surprise, or excusable neglect); part 60(b)(4) (the judgment is void); and part 60(b)(6) (any other reason that justifies relief).

Defendant Hudson asserts that its failure to retain new counsel and its failure to oppose Plaintiffs' summary judgment motion is due to "excusable neglect."[4]   Specifically, Hudson rests its excusable neglect assertion on the purported "failure of service argument," a claim that the Court has already addressed and found to be without merit, and Hudson's principal's assertion that he had difficulty finding counsel between the December 29, 2021 status conference (at which it was given time to retain counsel prior to the February 4, 2022 status conference) to a date some time in early April 2022 (approximately one month after the date for Hudson's response to Plaintiffs' motion for summary judgment was due), which period included approximately 10 days between January 31, 2022 to the second week of February 2022, when Mr. Greenbaum asserts he was out of the office after receiving a diagnosis of COVID-19 on January 31.  (ECF #44 PageID #167-168 & PageID #172; ECF #44-1 ¶19, PageID #177).

"In determining whether relief is appropriate under Rule 60(b)(1), courts consider three factors: '(1) culpability – that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense.'" *Burnley v. Bosch Ams. Corp.*, 75 F. App'x 329, 333 (6th Cir. 2003) (quoting *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156, 1160 (6th Cir. 1980)).

The facts of this case clearly demonstrate that Hudson has repeatedly been "neglectful"

---

[4]  Defendant's motion does not assert "mistake," "inadvertence," or "surprise." (ECF #44).

of this case from the date that its counsel withdrew representation in November 2021 to the date Hudson filed its motion for relief from judgment. First, despite being informed by the Court at the November 17, 2021 status conference (the day Hudson's counsels' motion to withdraw was granted) that Hudson needed to obtain new counsel by the time of the next status conference on December 17, 2021, Hudson failed to do so throughout the next three months (and specifically before the December 17, 2021 conference with the Court, and again before the February 4, 2022 conference). This failure persisted even after Hudson's principal, Andrew Greenbaum, was *personally told* by the Court of the need to do so at the December 29, 2021 status conference, at which Mr. Greenbaum attended by telephone. Second, Hudson was neglectful in failing to participate in any way at either the February 4, 2022 or March 9, 2022 status conferences, or even to contact the Court to seek an extension of either the conferences or the time to obtain new counsel. Third, Hudson was neglectful in not keeping up with the case or monitoring the docket throughout the entire period (not even through a phone call to Plaintiffs' counsel or the Court) though it knew, again from the December 29, 2021 conference at which the Court spoke to Mr. Greenbaum personally, that Plaintiffs would be filing a motion for summary judgment on either the date of the February 4, 2002 status conference or in the days immediately thereafter. (ECF #36) (Minutes of December 29, 2021 Status Conference). And, fourth, Hudson was neglectful when its principal exchanged e-mails with Plaintiffs' counsel on March 1 and 2, 2022, wherein Hudson was informed of the need to file an opposition to Plaintiffs' summary judgment motion by the March 4, 2022 briefing deadline, and it still did nothing to oppose the motion for summary judgment or ask for more time to respond.

The question for the Court under Rule 60(b)(1) is whether this neglect is *excusable*. As

the Sixth Circuit has often held, "[t]he failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is inexcusable neglect." *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490-91 (6th Cir. 2000) (applying *Kendall*); *Broach v. City of Cincinnati*, 244 F. App'x 729, 734-35 (6th Cir. 2007) (same). A general lack of diligence in keeping apprised of events in a case is also inexcusable neglect. *Broach*, 244 F. App'x at 735 (citing and quoting *B&D Partners v. Pastis*, No. 05-5954, 2006 U.S. App. LEXIS 11901, 2006 WL 1307480, at *3 (6th Cir. May 9, 2006) ("[W]hen inadvertent conduct leads to a judgment, a claim of mistake or excusable neglect will always fail if the facts demonstrate a lack of diligence").

Put simply, "gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 685 (6th Cir. 1999). This is especially so when a party has been repeatedly warned that neglect of a matter would lead to default or other adverse consequences. *See Anderson v. Taylorcraft, Inc.*, 197 F. Supp. 872, 874 (W.D. Pa. 1961) ("I find in the circumstances that the defendant was guilty of supine and inexcusable neglect by failing to enter an appearance or causing one to be entered for it, for not only does the summons contain a warning that inaction will result in a default judgment, but also later the plaintiffs' attorney renewed that warning, both of which the defendant ignored"). Here, not only did Hudson ignore the warnings of Plaintiffs' counsel about the need to respond to the summary judgment motion, it also had repeatedly ignored the warnings of the Court to retain counsel, attend conferences, and participate in the summary judgment briefing.

Hudson – through its repeated failures to attend status conferences, failure to put forward

-20-

much effort at all to retain counsel after being repeatedly directed by the Court to do so, failure to monitor the case activity, and failure to respond to the summary judgment motion or request more time to do so – has demonstrated inexcusable neglect of the matter.

Nor has Hudson shown that it has a "meritorious defense." Without ever having done so before in its answer or motion to dismiss, both filed through counsel, Hudson now claims that it has a "meritorious defense" to Plaintiffs' claims because "At all relevant times, Hudson was acting as a disclosed agent when it signed the LOI [Letter of Intent] on behalf of HH, the owner of the property." (ECF #44-1, Affidavit of Andrew Greenbaum ¶10, PageID #176). It is notable that in Hudson's motion to dismiss the Complaint, it does not even once mention the word "agency," either disclosed or implied. In fact, throughout its motion, Hudson identifies itself as one of the *parties* to the Letter of Intent later found to be a binding contract between the parties. (ECF #15, *Motion to Dismiss* & ECF #20, *Memorandum of Opinion and Order* denying Hudson's motion to dismiss). Then, after the Court's denial of Hudson's motion to dismiss, of the 13 affirmative defenses asserted by Hudson in its answer to the Complaint, again, not a single one of them raises the issue of "agency," either disclosed or implied. (ECF #22).

Hudson also claims, while never having mentioned it before, that another entity, "HH Cleveland Huntington LP" (the party for which it now asserts it was always a "disclosed agent" in its dealings with Plaintiffs) has acknowledged an obligation to pay the debt due to Plaintiffs for the architectural services rendered by Plaintiffs. Even if this is true, it is not a defense that can be resolved in this Court, as joinder of HH Cleveland Huntington, as an Ohio entity, would destroy the diversity upon which this Court's jurisdiction is based. Thus, it is not a defense that can be properly pursued in this Court.

-21-

Given Hudson's failure to demonstrate "excusable neglect," and the inability of "HH Cleveland Huntington" to be joined in federal court without destroying the diversity by which the Court's sole jurisdiction over the matter exists, relief in this Court under Rule 60(b)(1) is not warranted.

Hudson's Rule 60(b)(4) argument is essentially a repeat of its assertion that the summary judgment order is "void" for failure of effective service. This argument has already been addressed earlier in connection with Hudson's arguments under Rule 59(e), and been found to be without merit. Federal Rule of Civil Procedure 60(b)(4) is generally limited in its application to those cases in which the Court that rendered judgment lacked even arguable basis for jurisdiction in rendering its ruling, which is not the case here. *See Salem Pointe Capital, LLC v. Rarity Bay Partners*, 854 F. App'x 688, 702 (6th Cir. 2021 ("Courts considering Rule 60(b)(4) motions 'generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction.'") (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)). Accordingly, relief under Rule 60(b)(4) is also not warranted.

Finally, as Hudson admits, subsection (6) of Rule 60(b) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Rule 60(b)(6) will apply only in "unusual and extreme situations where principles of equity mandate relief." *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007). (ECF #44 PageID #172). In support of its motion for relief under Rule 60(b)(6), Hudson again offers its failure of service argument and its claim of difficulty in

-22-

finding representation. These are not the kind of "unusual and extreme situations where principles of equity mandate relief" warranting relief under Rule 60(b)(6).

Accordingly, Hudson's motion for relief from judgment under Rules 60(b)(1), 60(b)(4), and 60(b)(6) is DENIED.

## Plaintiffs' Motion for Prejudgment Interest

The Court found in its March 23, 2022 *Memorandum of Opinion and Order* that a valid contract existed between Plaintiffs WRL and DLR and Defendant Hudson, and that Hudson owed Plaintiffs the principal amount of $606,365.74. (ECF #40).

Because this matter involves a contractual agreement, and is before the Court as a diversity action, Ohio law governs any applicable prejudgment interest award in the action. *FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000) ("In diversity cases in this Circuit, federal law controls postjudgment interest but state law governs awards of prejudgment interest"). As the prevailing parties in this matter, Plaintiffs are entitled to contractual interest under Ohio Rev. Code § 1343.03(A). *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 693 (6th Cir. 2000) ("If a favorable judgment award has been obtained by plaintiff, plaintiff has a right under 1343.03(A) to an interest award as a matter of law"). An award of prejudgment interest "does not punish the party responsible for the underlying damages" at issue in a case, but rather "acts as compensation and serves ultimately to make the aggrieved party whole." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St. 3d 110, 117 (1995).

Ohio Rev. Code § 1343.03(A) provides:

In cases other than those provided for in sections 1343.01 and 1343.02 of the

Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

The contract in this matter did not include a specified rate of interest, thus calculation of prejudgment interest requires application of the default statutory interest rates under Ohio Rev. Code § 5703.47, which, for the pertinent years, are: 2016 (3%); 2017 (4%); 2018 (4%); 2019 (5%); 2020 (5%); 2021 (3%); and 2022 (3%).[5]

The dates of accrual for the principal amounts owed by Defendant Hudson are clear, unambiguous, and undisputed under the evidence provided in support of Plaintiffs' unopposed motion for summary judgment, which the Court granted. However, the exact amount on which to base those percentages is impacted by a discrepancy in calculation in Plaintiffs' papers between the total amount of principal damages requested in Plaintiffs' motion for summary judgment, on which the Court's grant of summary judgment was based, and Plaintiffs' calculations of the amounts invoiced to Hudson by WRL and DLR individually, on which it now calculates the amounts of prejudgment interest.

In the Court's March 23, 2002 *Memorandum of Opinion and Order*, it held that Defendant Hudson owed Plaintiffs the collective principal sum of $606,365.74, based on the

---

[5] Ohio Rev. Code § 5703.47 defines the default statutory interest rate by reference to the applicable "federal short term rate," as defined within the statute. The applicable interest rate percentages included herein are drawn from the calculations of appropriate interest rate percentages under section 5703.47 provided in Plaintiffs' unopposed motion for prejudgment interest.

affidavit statement submitted in support of Plaintiffs' motion for summary judgment that "The

principal sum due to WRL and DLR, jointly, is $606,365.74."  (ECF #38-1, Affidavit of Paul

Edward Westlake, Jr., in Support of Motion for Summary Judgment ¶14, PageID #142).  In that

same affidavit, Plaintiffs assert that the principal amount of the design services invoiced by WRL

to Hudson was $294,576.76 (ECF #38-1, ¶5, PageID #141) and the principal amount of the

design services invoiced by DLR to Hudson was $312,761.20 (ECF #38-1, ¶8, PageID #142).

These individual amounts total $607,337.96, a discrepancy of $972.22.

The Plaintiffs' motion for prejudgment interest bases their prejudgment interest

calculations on the individual sums instead of the *actual judgment amount* awarded in their

favor.  The Court believes that the most appropriate reading of Ohio Rev. Code § 1343.03(A) is

to award prejudgment interest based on the judgment actually rendered.[6]  Accordingly, while the

Court finds that Plaintiffs are entitled to an award of prejudgment interest, in order to determine

the precise amount to be awarded on the actual judgment, the Court hereby orders Plaintiffs to

resubmit its calculations based on the judgment award of $606,365.74.

---

[6] Although the Court has the power to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," on motion of a party or on its own, with or without notice, before any appeal has been filed, FED. R. CIV. P. 60(a), here, the Court's summary judgment award amount was not a "mistake," but rather an award consistent with the statement of the "total principal amount owed" identified by Plaintiffs in their affidavit in support of their motion seeking a summary judgment award.  This is also the judgment amount identified in the prayer for relief set forth in Plaintiffs' complaint.  (ECF #1 PageID #3) ("WHEREFORE, Plaintiffs WRL and DLR pray that this Court enter judgment against Defendant, Hudson Holdings, LLC, in the amount of $606,365.74, plus interest and costs").

## **CONCLUSION**

Accordingly, after considering the briefs, affidavits, and evidence submitted by the parties on Defendant Hudson's *Rule 59(e) Motion to Alter or Amend Judgment, or in the Alternative Rule 60(b) Motion to Vacate the Judgment* and Plaintiffs' *Motion for Prejudgment Interest*, examining the applicable law raised by both motions, and hearing oral argument, the Court DENIES Defendant Hudson's motion for relief under Rules 59(e) and 60(b) in its entirety and GRANTS Plaintiffs WRL's and DLR's motion for prejudgment interest, subject to Plaintiffs' filing of a revised calculation of the amount of appropriate prejudgment interest based on the Court's summary judgment award of $606,365.74, as issued on March 23, 2022.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: May 31, 2022

-26-